# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY MCKINLEY BOWEN, | CV F   07-00366 DLB HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| DERRAL G. ADAMS, | |
| Respondent. | [Doc. 1] |
| _____/ | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## RELEVANT HISTORY

Following jury trial in the Kings County Superior Court, Petitioner was convicted of kidnapping (California Penal Code § 207(a))[1], making criminal threats (§ 422), and inflicting corporal injury on a spouse or cohabitant (§ 273.5). Petitioner admitted to having served four prior prison terms (§ 667.5(b)), and having a prior "strike" conviction under California's Three Strikes Law (§§ 667(c)-(j), 1170.12(a)-(e)). Petitioner was sentenced to 23 years and four months in state prison.

Petitioner filed a timely notice of appeal. On April 7, 2005, the California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction and sentence. (Lodged Doc.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

No. 8.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on June 15, 2005.  (Lodged Doc. No. 9.)

On December 20, 2005, Petitioner filed a state habeas corpus petition in the Kings County Superior Court.  On January 6, 2006, the petition was denied, without prejudice, for failure to set forth a prima facie case for relief.  (Lodged Doc. No. 10.)

On April 13, 2006, Petitioner filed a state habeas corpus petition in the California Supreme Court, which was summarily denied on December 13, 2006.  (Lodged Doc. No. 11.)

Petitioner filed the instant petition for writ of habeas corpus on February 16, 2007. (Court Doc. 1.)  Respondent filed an answer to the petition on July 31, 2007, and Petitioner filed a traverse on September 28, 2007.  (Court Docs. 18, 28.)

<u>STATEMENT OF FACTS</u>[2]

[Petitioner] and Patricia Bowen had been married for about a year when they separated in June of 2003. [Petitioner] wished to reconcile; Mrs. Bowen did not.

In early July, Mrs. Bowen was in the front yard of her mother's residence visiting with her mother's boyfriend, Robert Hobbs, and his friend, Don Flenoid, when [Petitioner] drove up.  [Petitioner] shook hands with Hobbs and hit Mrs. Bowen in the face. [Petitioner] then said hello to Flenoid and again hit his wife. Mrs. Bowen asked why [Petitioner] hit her, but he grabbed her by the arm and forced her into his car.  Hobbs testified that he saw [Petitioner] drive up as he, Flenoid and Mrs. Bowen were talking. [Petitioner] shook hands with the men and slapped Mrs. Bowen with an open hand.  Hobbs went inside to call 9-1-1. Through the window, he saw [Petitioner] pushing Mrs. Bowen into the car.  By the time Hobbs got back outside, [Petitioner] and Mrs. Bowen were gone.  Flenoid also testified that [Petitioner] shook hands, slapped Mrs. Bowen and said, "I want to talk to you." [Petitioner] held on to Mrs. Bowen, put her in the car, and sped off.  As they sped off, the driver's side door flew open.  Flenoid told Hobbs "that didn't look right."  (RT 225.)

While they were in the car, [Petitioner] pinned Mrs. Bowen down and repeatedly hit her in the face with his fist and said, "Bitch, who do you think I am?"  Mrs. Bowen attempted to get out of the car. [Petitioner] told her, "Bitch, you jump out of the car, I'm going to kill you." [Petitioner] continued to hit Mrs. Bowen and tell her he would kill her.  Mrs. Bowen believed [Petitioner's] threats, due to the "force behind his hits" and things she had heard about his violent

---

[2] The Court finds the Court of Appeal correctly summarized the facts in its April 7, 2005, opinion. (Lodged Doc. No. 8.)  Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

nature–including that he had "shot someone in the mouth."[3]  At one point, Mrs. Bowen hit [Petitioner] in the face with her shoe and he almost lost control of the car.

[Petitioner] told Mrs. Bowen to jump out of the car.  When she opened the door, [Petitioner] pushed her out of the car while traveling 50 to 55 miles per hour.  Mrs. Bowen rolled on the ground.  Some motorists stopped and asked if she was alright.  She asked that they call the police. [Petitioner], who had stopped the car, came to where Mrs. Bowen and the others were and told them everything was okay and they could leave, which they did.

[Petitioner] forced his wife back into the car, and then told her he was going to drown her.  He drove Mrs. Bowen to a canal, pulled her out of the car and threatened to drown her if she did not reveal whom she was dating.  When Mrs. Bowen refused, [Petitioner] pushed her into the water.  Then [Petitioner] grabbed Mrs. Bowen by the hair and several times demanded information.  When she refused to give it, [Petitioner] threatened to kill her.  Eventually, [Petitioner] went to the car to get a towel.

Mrs. Bowen considered running, but she was scraped and bruised and believed [Petitioner] would catch her if she attempted to get away.  [Petitioner] wiped blood from Mrs. Bowen's face, arms and legs.  While Mrs. Bowen was wiping mud from her feet, a sheriff's deputy arrived.  [Petitioner] was arrested.

The deputy found Mrs. Bowen upset, "[a]lmost in a state of shock."  Mrs. Bowen sustained two black eyes, a swollen face, bruised lip, scrapes to her legs, back, ankles and feet, and knots on her head as a result of the assault.

[Petitioner] testified in his own behalf and claimed he told Mrs. Bowen he wanted to talk to her and she willingly got into the car with him.  Once in the car, she screamed, called him names and tried to kick him.  They argued and, when Mrs. Bowen refused to get out of the car, [Petitioner] threatened to call 9-1-1.  [Petitioner] at first claimed he never hit Mrs. Bowen.

[Petitioner] testified that, while he was driving Mrs. Bowen to her apartment, she got out of the car at a stop sign, but then chased the car and got back in.  Mrs. Bowen hit [Petitioner] with her shoe, causing him to lose control of the car.  Mrs. Bowen tried hitting [Petitioner] several times and he hit her back.  [Petitioner] claimed Mrs. Bowen then jumped out of the car and told a man who was there to call the police. [Petitioner] got out of his car, and the man got back into his truck and left. [Petitioner] helped Mrs. Bowen back into the car and told her he would take her home, but she did not want to go home.

[Petitioner] then drove to the canal to wash blood off himself.  He used a towel from the car to clean the interior of the car.  When Mrs. Bowen told [Petitioner] her foot hurt, he suggested she wash it in the canal. [Petitioner] grabbed her when she slipped while trying to enter the canal.

[Petitioner] denied hitting Mrs. Bowen other than in response to her hitting him.  He denied ever threatening to kill or injure her. [Petitioner] claimed Hobbs, Flenoid and Mrs. Bowen all lied when they said he hit Mrs. Bowen.

[Petitioner] estimated he had been convicted of three felonies: burglary, assault, and drug possession.  He had been in prison four times.

(Lodged Doc. No. 8, Opinion, at 2-4, footnote in original.)

## DISCUSSION

A.    Jurisdiction

---

[3]  This evidence was admitted, over defense objection, to show Mrs. Bowen's state of mind as relevant to count II charging criminal threat.

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

1   Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

2   because that court concludes in its independent judgment that the relevant state-court decision

3   applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

4   omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

5          While habeas corpus relief is an important instrument to assure that individuals are

6   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

7   (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

8   criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

9   Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

10  factual determinations must be presumed correct, and the federal court must accept all factual

11  findings made by the state court unless the petitioner can rebut "the presumption of correctness

12  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

13  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

14  110 F.3d 1380, 1388 (9th Cir. 1997).

15  C.     Instructional Error

16         Petitioner contends that the trial court erred by failing to give, sua sponte, the unanimity

17  instruction[4] (CALJIC No. 17.01), in violation of his constitutional right to due process.

18         Petitioner raised this claim on direct appeal to the California Court of Appeal and

19  California Supreme Court.  Because the California Supreme Court's opinion is summary in

20  nature, however, this Court "looks through" that decision and presumes it adopted the reasoning

21  of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst

22  v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)

23

24         [4] The unanimity instruction, CALJIC No. 17.01, states:
               The defendant is accused of having committed the crime of ____ [in Count ___].  The
25      prosecution has introduced evidence for the purpose of showing that there is more than one [act]
        [or] [omission] upon which a conviction [on Count __] may be based.  Defendant may be found
26      guilty if the proof shows beyond a reasonable doubt that [he] [she] committed any one or more of
        the [acts] [or] [omissions].  However, in order to return a verdict of guilty [to Count __], all jurors
27      must agree that [he] [she] committed the same [act] [or] [omission] agreed upon be stated in your
        verdict.

28

(establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In rejecting Petitioner's claim, the Court of Appeal held:

> Under the California Constitution, a unanimous jury verdict is required to convict a person of a criminal offense.  Jurors must unanimously agree the defendant is "criminally responsible for 'one discrete criminal event.'" "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" When a defendant is charged with a single criminal offense, but the evidence shows more than one act which could constitute that offense, either the prosecutor must select the specific act relied on or the trial court must instruct the jurors that they must unanimously agree that defendant committed the same specific act. . . . "Even absent a request, the court should give the instruction 'where the circumstances of the case so dictate.'"

> Two exceptions to the general rule, which somewhat overlap, apply here.  First is the situation in which the two acts were part of a continuous course of conduct.  "The unanimity instruction is not required when the acts alleged are so closely connected as to form part of one transaction.  The 'continuous conduct' rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them."

> [Petitioner] kidnapped Mrs. Bowen during essentially one encounter.  A kidnapping continues so long as the involuntary asportation or detention continues. [Petitioner] forced his wife into the car at her mother's home.  When she jumped out of the car at [Petitioner's] behest, he stopped and forced her back into the car. [Petitioner's] defense to each act was that Mrs. Bowen lied about being forced into the car.  There is no reasonable basis to distinguish between the two acts.

> [Petitioner], in fact, does not argue that a continuous course of conduct was not shown by the evidence.  Instead, he asserts that Respondent is estopped from relying on this theory because it conflicts with the prosecutor's argument at trial.  We need not decide this point, however, because another exception to the requirement of a unanimity instruction applies here.

> As held by our Supreme Court in *People v. Champion*, 9 Cal.4th 879 (1995), a unanimity instruction is not required where the acts are substantially identical in nature and the jury, believing that one act occurred, must inexorably believe all the acts took place.  In *Champion*, the defendant was charged with one count of rape.  The victim testified that the defendant raped her, left, and returned a short while later and raped her again.  The defendant argued he was not present when the crimes were committed.  A unanimity instruction was not necessary because it was inconceivable that a juror would believe that one rape occurred but not the second rape of the same victim.

1     [Petitioner] claimed Mrs. Bowen fabricated the charge.  According to
      [Petitioner], his wife went with him willingly, jumped out of the car on her own
2     accord and willingly got back in.  Mrs. Bowen testified that she was physically
      thrown into the car, pushed out of the car, and thrown back into the car, all against
3     her will.  It was the jury's decision whether to believe [Petitioner] or Mrs. Bowen.
      Having found [Petitioner] guilty of kidnapping, the jury must obviously have
4     believed Mrs. Bowen's version of the incident.  There is no reasonable manner to
      distinguish between the two "kidnappings" as [Petitioner] contends.

5
                     [¶] . . . [¶]
6

7            [Petitioner] contends that he offered a different explanation as to each
      instance . . . He argues that Mrs. Bowen got into the car willingly at her mother's
8     house, and that, after she jumped out of the car on her own accord, she chased the
      car and willingly got back in.  We fail to see the distinction between these two
9     defenses. [Petitioner] claims in both that Mrs. Bowen was not forced against her
      will, but went with him willingly.

10    (Lodged Doc. No. 8, Opinion, at 5-8.)

11           Respondent correctly argues that the instant claim is not cognizable in a federal habeas

12    action because the claim only implicates a violation of state law.  The Constitution does not

13    require unanimity in a jury verdict.  <u>Apodaca v. Oregon</u>, 404 U.S. 406, 410-413 (1972).  Thus,

14    Petitioner cannot demonstrate that the state court rejection of his claim was contrary to or an

15    unreasonable application of Federal law.

16           In any event, as discussed by the appellate court, the unanimity instruction was not

17    required under California law.  The kidnapping was one continuous transaction.  Petitioner

18    forced his wife into the car at her mother's home, and when she jumped out of the car at

19    Petitioner's insistence, he stopped and forced her back into the car.  In defense, Petitioner argued

20    that Mrs. Bowen lied about each of the instances.  Therefore, there was no reason to separate the

21    kidnappings into separate events.  Under California law, Petitioner's commission of the

22    kidnapping  was "so closely connected in time" that the unanimity instruction was not required.

23    <u>People v. Crandell</u>, 46 Cal.3d 833, 875 (1988).

24           Petitioner fails to present a cognizable federal claim.  In addition, Petitioner fails to

25    demonstrate that the omission of the instruction on unanimity deprived him of a fair trial in

26    violation of his due process rights.  The claim should be denied.

27    D.     <u>Ineffective Assistance of Counsel</u>

28           Petitioner contends that his trial counsel was ineffective for failing to object to the

7

1   impeachment of his testimony.

2          Petitioner raised this issue to the California Court of Appeal and the California Supreme

3   Court.  In the last reasoned state court decision, the Court of Appeal held:

4                 [Petitioner] does not question defense counsel's choice to bring up his
           prior convictions during direct examination, but cites three ways in which he
5          received ineffective assistance of counsel.  First, [Petitioner] contends counsel
           should have objected to the prosecutor's inquiry concerning the nature of his prior
6          drug conviction and his drug addiction.  Evidence of past misconduct, including
           prior convictions, is admissible to impeach the credibility of a witness if the
7          conduct reflects moral turpitude.  (*People v. Wheeler* (1992) 4 Cal.4th 284, 295;
           *People v. Castro* (1985) 38 Cal.3d 301, 306.)  However, [Petitioner] argues, and
8          respondent agrees, that possession of cocaine and drug addiction are not crimes of
           moral turpitude.  (*Castro, supra*, at p. 317.)  Ordinarily, [Petitioner] should not
9          have been impeached with his conviction for simple possession, and the use of a
           particular drug was also not relevant.

10
                  Second, [Petitioner] contends counsel should have moved to sanitize his
11         prior assault conviction.  It is within a court's discretion to sanitize priors by
           allowing their use without reference to the nature of the underlying offense.
12         (*People v. Massey* (1987) 192 Cal.App.3d 819, 825; *People v. Sandoval* (1992) 4
           Cal.4th 155, 178.)  Though [Petitioner] does not say so directly, we wonder why
13         counsel did not object to the prosecutor's emphasis through questions on
           [Petitioner's] use of a firearm in connection with his prior assault.
14
                  Third, [Petitioner] contends defense counsel was ineffective for failing to
15         object to prosecutorial misconduct in the form of bad faith questions.
           Specifically, [Petitioner] contends the prosecutor asked [Petitioner], in error, if he
16         remembered being convicted of felony theft in 1982 and 1994. [Petitioner's] past
           theft convictions were misdemeanors, not felonies.
17
                  We agree with [Petitioner] that counsel's failure to object in connection
18         with impeachment of [Petitioner's] testimony was questionable.  Were it not for
           the conclusion that follows, we would find it necessary to explore this further.
19         We conclude, however, that [Petitioner] has failed to show prejudice.

20                [Petitioner] contends that prejudice must be recognized because the
           evidence created a credibility contest between his testimony and that of Mrs.
21         Bowen.  This fails to recognize important factors.  These are that (1) Mrs.
           Bowen's testimony was corroborated by the witnesses Hobbs and Flenoid; (2)
22         [Petitioner] offered nothing to show that either of them was biased or had any
           reason to lie; and (3) [Petitioner] was subject to impeachment with some or all of
23         his felony convictions and was not entitled to testify with "'a false aura of
           *veracity.'" (People v. Carpenter* (1999) 21 Cal.4th 1016, 1056; quoting *People* v.
24         Beagle (1982) 6 Cal.3d 441, 453.)

25                "' . . . In determining prejudice, we inquire whether there is a reasonable
           probability that, but for counsel's deficiencies, the result would have been more
26         favorable to the defendant.' [Citations.]" (*People v. Frey* (1998) 18 Cal.4th 894,
           979.)  Based on our review of the entire record, we conclude such has not been
27         shown.

28   (Lodged Doc. No. 8, Opinion, at 10-12.)

1    The law governing ineffective assistance of counsel claims is clearly established for the

2  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

3  151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

4  assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

5  668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

6  the petitioner must show that counsel's performance was deficient, requiring a showing that

7  counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

8  the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

9  representation fell below an objective standard of reasonableness, and must identify counsel's

10  alleged acts or omissions that were not the result of reasonable professional judgment

11  considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

12  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

13  a strong presumption that counsel's conduct falls within the wide range of reasonable

14  professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

15  Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

16    Second, the petitioner must show that counsel's errors were so egregious as to deprive

17  defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

18  also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

19  ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

20  1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

21  was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

22  (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

23  have been different.

24    A court need not determine whether counsel's performance was deficient before

25  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

26  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

27  prejudice, any deficiency that does not result in prejudice must necessarily fail.

28    Ineffective assistance of counsel claims are analyzed under the "unreasonable

9

application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (2000).

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Even if this Court assumes that counsel may have been ineffective, Petitioner has failed to demonstrate any resulting prejudice, as required by <u>Strickland</u>.  Although Petitioner claims that the pivotal issue in the case was the credibility determination between himself and Mrs. Bowen, Petitioner overlooks the fact that, unlike his testimony, there was other independent evidence in support of Mrs. Bowen's credibility.  Both witnesses testified that they observed Petitioner slap the victim on the face, then push her into his vehicle and sped away.  (<u>See</u> RT at 130-133, 221-228, trial testimony of Robert Hobbs and Donald Flenoid.)  Based on the finding of guilt, the jury obviously found Mrs. Bowen's testimony more credible, and it cannot be said that there is a reasonable probability that the result of the proceedings would have been different had counsel objected to the impeachment testimony.  Petitioner's claim fails on the merits.

E.   <u>Sentencing Error</u>

Petitioner contends he was sentenced in violation of the Supreme Court's holding in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), because the aggravating factors used to impose the upper term were neither found by the jury nor admitted by Petitioner.

On December 23, 2003, Petitioner was sentenced to the upper term of eight years for the kidnapping charge (§§ 207, 208), doubled pursuant to the Three Strikes Law (§§ 667(c)-(j), and 1170.12(a)-(e)), plus a consecutive one year and four months for making a criminal threat (§§ 422, 18), plus a consecutive two years for spousal injury (§ 273.5), plus an additional four years for four prior prison terms served (§ 667.5(b)).  (1 CT 236-239; 4 RT 490-491.)

Petitioner raised the instant claim to the California Court of Appeal and California Supreme Court.  (Lodged Doc. Nos. 2, 8, 9.)  On April 7, 2005, the Court of Appeal affirmed the judgment.  Two of the three justice panel denied Petitioner's <u>Blakely</u> claim, reasoning that California's Determinate Sentence Law was constitutional.  The third justice concurred in the result, but opined that it was not necessary to decide the sentencing issue in light of <u>Blakely</u>, as

1   the trial court implicitly relied upon Petitioner's prior record of criminal conduct, which does not

2   implicate Blakely. (Lodged Doc. No. 8, Concurring Opinion, at 1.)

3      Petitioner filed a petition for review in the California Supreme Court.  On June 15, 2005,

4   the California Supreme Court denied the petition for review "without prejudice to any relief to

5   which [Petitioner] might be entitled after [the California Supreme Court] determine[d] in *People*

6   *v. Black*, S126182, and *People v. Towne*, 125677, the effect of *Blakely v. Washington*, [542 U.S.

7   at 296]." (Lodged Doc. No. 9.)

8      In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court

9   overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty

10  beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that

11  the defendant "acted with a purpose to intimidate an individual or group of individuals because

12  of race, color, gender, handicap, religion, sexual orientation, or ethnicity."  Apprendi v. New

13  Jersey, 530 U.S. at 469.  The Supreme Court reversed, holding that "any fact that increases the

14  penalty for a crime *beyond the prescribed statutory maximum* must be submitted to jury, and

15  proved beyond a reasonable doubt."  Id. at 490. (Emphasis added.)

16     In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Court explained that

17  the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose

18  solely on the basis of facts reflected in the jury verdict or admitted by the defendant.  In other

19  words, the relevant "statutory maximum " is not the maximum sentence a judge may impose

20  after finding additional facts, but the maximum he may impose without any additional facts."  Id

21  at 303-304.

22     In both Apprendi and Blakely, state law established an ordinary sentencing range for the

23  crime the defendant was convicted of committing, but allowed the court to impose a sentence in

24  excess of that range if it determined the existence of specified facts not intrinsic to the crime.  In

25  each case the Supreme Court held that a sentence in excess of the ordinary range was

26  unconstitutional because it was based on facts that were not admitted by defendant or found true

27  by the jury beyond a reasonable doubt.

28     In United States v. Booker, 543 U.S. 220, 125 S. Ct. 788 (2005), the Court applied its

1   holding in Blakely to the Federal Sentencing Guidelines, finding the Guidelines unconstitutional.

2   In reforming the Guidelines, the Court stated "If the Guidelines as currently written could be read

3   as merely advisory provisions that recommended, rather than required, the selection of particular

4   sentences in response to differing sets of facts, their use would not implicate the Sixth

5   Amendment.  We have never doubted the authority of a judge to exercise broad discretion in

6   imposing a sentence within a statutory range." Id. at 233.  "For when a trial judge exercises his

7   discretion to select a specific sentence within a defined range, the defendant has no right to a jury

8   determination of the facts that the judge deems relevant."  Id.

9        In People v. Black, 35 Cal. 4th 1238 (June 20, 2005), the California Supreme Court held

10  that California's Determinative Sentencing Law satisfied federal constitutional law as follows:

11  "Blakely and Booker established a constitutionally significant distinction between a sentencing

12  scheme that permits judges to engage in the type of judicial fact finding typically and

13  traditionally involved in the exercise of judicial discretion employed in selecting a sentence from

14  within the range prescribed for an offense, and a sentencing scheme that assigns to judges the

15  type of fact-finding role traditionally exercised by juries in determining the existence or

16  nonexistence of elements of an offense."  People v. Black, 35 Cal.4th at 1253.  "[I]n operation

17  and effect, the provisions of the California determinate sentence law simply authorize a

18  sentencing court to engage in the type of fact-finding that traditionally has been incident to the

19  judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." Id.

20  at 1254.  The Court held that the "presumptive" midterm does nothing more than establish a

21  "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that

22  which the United States Supreme Court has deemed constitutional.  Id. at 1261.

23       Most recently, in Cunningham v. California, __ U.S. __, 127 S.Ct. 856 (2007), the

24  Supreme Court overruled the holding in Black, and held that the middle term in California's

25  determinate sentencing law was the relevant statutory maximum for the purpose of applying

26  Blakely and Apprendi.  Id. at 868.  Specifically, the Court held that imposing the upper sentence

27  violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns

28  to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated

'upper term' sentence." Id. at 860.

"State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" Beard v. Banks, 542 U.S. 406, 411 (2004) (quoting Caspari v. Bohlen, 510 U.S. 383, 390 (1994)). Here, Petitioner's conviction became final on September 13, 2005, when the ninety day period after the California Supreme Court denied his petition expired. Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari in the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). Apprendi, Blakely, and Booker were all decided before Petitioner's conviction became final; however, Cunningham was not decided until January 22, 2007, well after Petitioner's conviction became final.

Because the state court's decision was issued prior to Cunningham, the issue becomes whether that decision should be applied retroactively to Petitioner on collateral review, which has not yet been addressed by the Ninth Circuit Court of Appeals. For the reasons discussed infra, this Court, like several other district courts, finds in the negative. See e.g. Fennen v. Nakayema, 494 F.Supp.2d 1148, 1155-1156 (E.D. Cal. 2007); Jordan v. Evans, 2007 WL 2703118, *10-11 (S.D. Cal.); Marquez v. Evans, 2007 WL 2406867, *8-9 (N.D. Cal.).

In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1986), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague, 489 U.S. at 310. A new rule is one which "breaks new ground or imposes a new obligation on the States or the Federal Government;" in other words, a new rule is one where "the result was not dictated by precedent existing at the time of the defendant's conviction became final." Teague, 489 U.S. at 301; Snook v. Wood, 89 F.3d 605, 612 (9th Cir. 1996).

A Teague analysis requires the Court to engage in a three step process. First, the Court must determine the date the petitioner's conviction became final. See Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 953-954 (1994); Snook, 89 F.3d at 612. Second, the Court must

survey the legal landscape as it existed when the petitioner's conviction became final and

determine whether a state court considering the petitioner's claim at that time would have felt

compelled by existing precedent to conclude the new rule was required by the Constitution.

Caspari, 510 U.S. at 390; Saffle v. Parks, 494 U.S. 484, 488 110 S.Ct. 1257, 1260 (1990).  Third,

if the Court determines that the petitioner seeks the benefit of new rule, the Court must consider

whether the relief sought falls within one of the two narrow exceptions to non-retroactivity.  See

Gilmore v. Taylor, 508 U.S. 333, 345, 113 S.Ct. 2112, 2119 (1993).  The two narrow exceptions

are (1) "the rule places a class of private conduct beyond the power of the State to proscribe . . .

or addresses a substantive categorical guarante[d] accorded by the Constitution;" or (2) the rule

announces a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and

accuracy of the criminal proceeding."  Graham, 506 U.S. at 477-78, 113 S.Ct. 892, 903 (internal

quotations omitted).  The first exception only applies to rules that place certain private

"individual conduct beyond the power of the criminal law-making authority to proscribe."

Teague, 489 U.S., at 307.  The second exception applies to watershed rules, which are those rules

that are "central to an accurate determination of innocence or  guilt."  Teague, 489 U.S. at 313,

109 S.Ct. 1060.  Watershed rules of criminal procedure implicate "the fundamental fairness and

accuracy of the criminal proceeding,"  Saffle, 494 U.S. at 495;  Teague, 489 U.S. at 311, and are

the small core of rules that require procedures which are implicit in the concept of ordered

liberty.  Graham, 506 U.S. at 478, 113 S.Ct. at 903.

     As was the case in Blakely, Cunningham shifted the decision-making authority from the

judge to the jury to determine any facts which may increase a defendant's sentence, such

determination is a procedural rather than substantive rule.  Further, a mere change in the law as to

the decision-making authority regarding factual findings bearing on a sentence enhancement is

not a watershed rule in criminal procedure. See Schardt, 414 F.3d at 1036.

     First, neither Apprendi, Blakely, or Booker, have been applied retroactively.  Sanchez-

Cervantes, 282 F.3d 664, 666-667 (9th Cir. 2002); Schardt v. Payne, 414 F.3d 1025 (9th Cir.

2005); United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005).  This being so, it appears

highly unlikely that Cunningham would be applied retroactively.  This finding is supported by

several district courts that have addressed the issue.  See e.g. Fennen v. Nakayema, 494

F.Supp.2d 1148, 2007 WL 1742339 (E.D. Cal., June 14, 2007); Rosales v. Horel, 2007 WL

1852186 (S.D. Cal., June 26, 2007); Salerno v. Schriro, 2007 WL 2153584 (D. Ariz., July 24,

2007).

        To the extent Petitioner may argue that Blakely was decided before his conviction became

final, and Cunningham is merely an extension of the holding in Blakely and should be applied

retroactively, such argument is not persuasive.  To make that determination, this Court would

have to find that the holding in Cunningham was dictated by Blakely.  A new rule is defined as

"a rule that ... was not 'dictated by precedent existing at the time the defendant's conviction

became final.'" Whorton v. Bockting, __ U.S. __, 127 S.Ct. 1173, 1181 (2007).  This Court finds

that Cunningham constitutes a "new rule" under Teague.  As the holding in Cunningham is

similar in reasoning to the holdings in Apprendi, Blakely, and Booker, it too constitutes a "new

rule" under Teague.

        Further, the Cunningham decision was a six-member majority opinion.  Justices Alito,

Kennedy, and Breyer, filed a dissenting opinion, reasoning that Apprendi should not be extended

to California's determinate sentencing law, because the sentencing scheme was indistinguishable

from the *advisory* Guideline scheme approved of in Booker.[5]  Justice Alito, writing for the

dissent stated that "the Booker Court unanimously agreed that judicial factfinding under a purely

advisory guidelines system would [] comport with the Sixth Amendment."  Cunningham, 127

S.Ct. at 874.  It was noted that "the California law gives a judge at least as much sentencing

discretion as does the post-Booker federal scheme." Id. at 877. "The California scheme-like the

federal 'advisory Guidelines'-does require that this discretion be exercised reasonably." Id. at

878.

        In light of the split and strong dissent in the Cunningham decision, it simply cannot be

said that the result in Cunningham was dictated by Blakely.  Even though the holding in Blakely

---

[5] Justices Kennedy and Breyer also believed that Apprendi could be applied to only sentencing enhancements based on the nature of offense (jury determination) and not the nature of the offender (judicial determination).  127 S.Ct. at 872-873.

1   was the central reasoning in support of the majority opinion in <u>Cunningham</u>, mere application of

2   a prior decision is not equivalent to being "dictated by precedent."  In light of the fact that three

3   justices found that California's sentencing scheme was more akin to the advisory Guidelines of

4   which <u>Booker</u> approved, this Court finds that "reasonable jurists" could find the same.  <u>See</u> <u>e.g.</u>

5   <u>Whorton v. Bockting</u>, 127 S.Ct. at 1181.

6         Finally, the <u>Cunningham</u> decision does not come within either of the two exceptions to

7   the Teague nonretroactivity doctrine.  The <u>Cunningham</u> decision is strictly a procedural rule that

8   does not prohibit punishment for a certain class of individuals because of their status or offense,

9   nor is the mere fact finding change from judge to jury upon which to impose an upper term

10  sentence announce a watershed rule of criminal procedure.  <u>See</u> <u>Graham v. Collins</u>, 506 U.S. at

11  477-78 (the two narrow exceptions are (1) "the rule places a class of private conduct beyond the

12  power of the State to proscribe . . . or addresses a substantive categorical guarante[e] accorded by

13  the Constitution;" or (2) the rule announces a "watershed rule[ ] of criminal procedure

14  implicating the fundamental fairness and accuracy of the criminal proceeding.") (internal

15  quotations omitted.)

16        Next, the issue becomes whether the state courts' determination of this issue was

17  contrary to, or an unreasonable application of Supreme Court authority.  As just stated, the

18  imposition of the upper-term was based, in part, on Petitioner's prior convictions.  Although in

19  <u>Cunningham</u>, the Supreme Court invalidated California's upper-term sentencing scheme based

20  on facts not found by the jury, it specifically acknowledged, as it did in prior cases, that sentences

21  based on a defendant's prior convictions does not violate the Sixth Amendment.  <u>Cunningham</u>,

22  127 S.Ct. At 860, 864, 868; <i>accord</i> <u>Blakely</u>, 542 U.S. at 301; <u>Apprendi</u>, 530 U.S. at 490;

23  <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998).  To this end, the trial court found that

24  the upper-term was warranted based, in part, on Petitioner's prior convictions.  (4 RT 486-488.)

25  Finding no factors in mitigation, the trial court found the upper term was justified by the

26  aggravating circumstances of Petitioner's large number of convictions and history of violations

27

28

of parole and probation, stating "all of these crimes would warrant an upper term commitment."[6] (4 RT 486-488.)

As Respondent correctly submits, the United States Supreme Court has never defined the scope of the prior conviction exception; however, circuit case law supports the finding that it is reasonable to conclude that this exception includes the type of judicial findings made by the trial court in this case.[7] To illustrate, the Second Circuit Court of Appeals, has held that the prior conviction exception includes "not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determinate the 'who, what, when, and where' of a prior conviction." United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001); see United States v. Fagans, 406 F.3d 138, 141-142 (2d Cir. 2005) ("the type and length of a sentence imposed seem logically to fall within this exception.") The Eighth Circuit Court of Appeals has determined that the prior conviction exception applies to "sentencing-related circumstances of recidivism," stating "that it is entirely appropriate for judges to have 'the task of finding not only the mere fact of previous convictions but other related issues as well.'" United States v. Kempis-Bonola, 287 F.3d 699, 703 (8th Cir. 2002). In addition, the Tenth Circuit Court of Appeals has stated that "the 'prior conviction' exception extends to 'subsidiary findings' such as whether a defendant was under court supervision when he or she committed a subsequent crime." United States v. Corchado, 427 F.3d 815, 820 (10th Cir. 2005).

In addition, several state courts, including the California Supreme Court have likewise found that the prior conviction exception includes the type of finding as was made in the instant case. More specifically, the California Supreme Court has noted that the exception includes

---

[6] As noted by Respondent, the probation report contains a list of Petitioner's lengthy prior convictions including a juvenile conviction of assault with a deadly weapon and two convictions of battery. Petitioner's adult record, steaming back as early as 1976, includes convictions for receiving stolen property, possession of marijuana, assault on a peace officer, burglary, possession of a firearm, assault, three separate instances of being under influence of controlled substance, vandalism, trespassing, battery, spousal abuse, two separate instances of public intoxication, challenge to fight, possession of cocaine with prior strike conviction, and evading court process. (CT 197-200.)

[7] Out-of-circuit federal and state appellate court decisions are helpful in determining the reasonableness of a particular state court adjudication. LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000),

more than the mere fact of a prior conviction and includes such matters as the sentence imposed and the status and timing of the incarceration in relation to the subsequent offenses. People v. McGee, 38 Cal.4th 682, 700-703 (2006) (*citing with approval* People v. Thomas, 91 Cal.App.4th 212, 221-222 (2001)); see also State v. Stewart, 791 A.2d 143, 151-152 (Md. 2002) (prior conviction exception "is not limited solely to prior convictions. The general rule is that there is no right to a jury trial on matters related to the broader issue of recidivism."). The Supreme Courts of Washington, Connecticut, Indiana, and Minnesota have all held that the exception may include a determination of whether the defendant was on probation at the time of the current offense. See State v. Jones, 149 P.3d 636, 640-641 (Wash. 2006); State v. Fagan, 905 A.2d 1101, 1121 (Conn. 2006); Ryle v. States, 842 N.E.2d 320, 323-325 (Ind. 2005); State v. Allen, 706 N.W.2d 40, 47-48 (Minn. 2005).

Moreover, in California, "[a] single aggravating factor is sufficient to impose an aggravated upper prison term where the aggravating factor outweighs the cumulative effect of all mitigating factors. . . ." People v. Nevill, 167 Cal.App.3d 198, 202 (1985); see also People v. Black, 41 Cal.4th 799, 806 (2007). Here, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, as the trial court's imposition of the upper term was properly based, in part, on Petitioner's recidivism, and Petitioner was not entitled to a jury trial on such findings.

Furthermore, even if there was error under Blakely, Petitioner has not established the requisite harm. Blakely errors are subject to harmless error analysis as it is not considered to be a structural error. Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546 (2006). In a habeas corpus proceeding, the proper standard of review is that announced in Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether the error had a "substantial and injurious effect." This is so, regardless of whether the state appellate court recognized the error and reviewed it for harmlessness under the "beyond a reasonable doubt" standard of Chapman v. California, 386 U.S. 18, 24 (1967). Fry v. Pliler, __ U.S. __, 127 S.Ct 2321, 2325-2327 (2007). Because only one aggravating factor need be found to impose the upper term sentence, the error is harmless if the jury could have found, at a minimum, at least one of the aggravating circumstances true

beyond a reasonable doubt.

Here, any error was harmless as the imposition of the upper term was based on uncontested or overwhelming evidence of Petitioner's recidivism.  It was undisputed that Petitioner had a lengthy criminal history, as the probation report reflects numerous prior convictions and violations of probation or and/parole. (CT 197-203.)  In addition, Petitioner was out on parole when the instant offenses were committed.  Accordingly, there was ample evidence for the jury to render a verdict beyond a reasonable doubt on the above recidivist circumstances, any one of which would have authorized the imposition of the upper term.  This is particularly so, given the lack of any mitigating factors and the strong overwhelming evidence supporting the recidivist factors in aggravation.  Based on the foregoing, the Court finds that any error was harmless under <u>Brecht</u>, and the claim should be denied.

F.      <u>Juror Bias</u>

Petitioner contends that his constitutional right to a fair and impartial jury was violated because the trial judge declined to remove a juror who was acquainted with the victim.

Petitioner did not raise this claim on direct appeal to the California Court of Appeal or California Supreme Court.  Rather, Petitioner raised this claim by way of state petition for writ of habeas corpus to the Kings County Superior Court and the California Supreme Court, which were both summarily denied without comment.  (Lodged Docs. 10, 11.)  AEDPA's strict standard of review is relaxed when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." <u>Brazzel v. Washington</u>, 491 F.3d 976, 981 (9th Cir. 2007), *quoting* <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir.2002); <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

1.      <u>Background</u>

During trial, Juror No. 36 advised the court that she was acquainted with the victim in

this case.  The court immediately cleared the courtroom and the following colloquy took place in camera:

> THE COURT: . . . I understand that you may be acquainted with the victim or you think you might possibly be?
> JUROR #0036: I believe on two occasions she is the young lady that has cut my hair at JCPenney.  I did not recognize the name.  The face was familiar, but I couldn't link it together.
> THE COURT: Okay.  If it does turn out that you think that likely is the case after seeing her – or you're still not sure?
> JUROR #0036: I believe on two occasions, yes.  I do go to another person in there.
> THE COURT: Did you overhear any conversations that might have anything to do with this case?
> JUROR #0036: Oh no.  The name, when I came in here initially, your Honor, it didn't ring a bell.
> THE COURT: How do you feel about it now, knowing that this – that you might be acquainted with this witness?  Do you think that's going to prevent you from being able to be fair and objective to both sides?
> JUROR #0036: No, your honor.
> THE COURT: And would you be able to disregard any prior acquaintance you had with her and evaluate her testimony like you would any other witness?
> JUROR #0036: I believe I can, because it, you know, cutting my hair is just a nominal amount of time, and I'm not a very vocal person.  And generally I go to someone else.
> THE COURT: All right.  Any questions that I should ask the juror, counsel?
> [PETITIONER'S TRIAL COUNSEL]: I'm satisfied, your honor.
> [DISTRICT ATTORNEY]: No, your honor.

(1 RT 64-65.)  The court found the juror's acquaintance did not provide an adequate reason for removal from the jury panel.

On October 16, 2003, the initial date set for sentencing, Petitioner's counsel requested a continuance to investigate possible juror misconduct.  Upon a finding good cause, the court granted the continuance.  (3 RT 401-402.)  On December 16, 2003, Petitioner filed a motion to unseal juror identifying information under California Code of Civil Procedure section 237.  Petitioner stated:

> During the trial of this action, one of the jurors apprised the court that while she testified during jury selection that she knew neither me nor the purported victim in this action, she in fact, did know the purported victim.  However, I am informed that the purported victim has stated that she and the juror were quite good friends and the juror has discussed the case and the juror stated to the victim that she knew I was going to be guilty.

(1 CT 224; Pet. Exh. F.)  The hearing on the motion was continued and an investigator was appointed to assist the defense.  (4 RT 457-458.)

20

The court held a hearing on Petitioner's motion on December 23, 2003.  Petitioner testified that James Hurbard overheard the victim and Juror #0036 discussing the trial and the juror stated that "they" were going to find Petitioner guilty.  (4 RT 464-466.)  James Hurbard testified that he has raised Petitioner and was "essentially his father."  (4 RT 467.)  He was present intermittently throughout the trial, but was not familiar with any of the jurors.  (Id.)  Approximately a week after the conclusion of the trial, he over heard two ladies (whom he was not familiar with) conversing at a store and heard one of them indicate that one of the jurors had a conflict.  (4 RT 467-473.)

After listening to testimony, the count found insufficient evidence to warrant access to the juror identification information stating:

> [Defense counsel], your client's declaration says, 'I am informed that the purported victim has stated that she and the juror were quite good friends and that the juror has discussed the case and the juror stated to the victim she knew I was going to be found guilty."  Unless I have some source of the attribution of that statement under oath by your client, I don't have any – I don't' have any basis for ordering further investigation of juror identification.

(4 RT 474.)  The court went on to state:

> [T]here is no identity of anyone who overheard the victim saying that she and the juror were quite good friends as alleged to be the case by [Petitioner].  And absent the identity of any person who purportedly overheard that victim making that statement, I'm going to conclude that it was not supported by any factual basis.

(4 RT 475-476.)  In response to further questioning from the court, Petitioner acknowledged that he did not hear any conversations by the victim; however, he claimed that other people overheard the victim's mother jokingly tell others that Juror #0036 was the victim's friend.  Petitioner indicated that the declaration contained a misprint and should have stated that the victim and her mother were saying "that they was going to get me 'cause that is her friend and she did her hair several times and discussed the matter."  (4 RT 481.)

The court concluded:

> [T]he identity of Ms. Avila is already known to the parties, there's no reason to disclose her, and she has cooperated, and I see no reason to disclose juror identifying information with regard to her identity.  And nothing has been offered today that would suggest there's any reason to disclose the identification of the other jurors nor to order a hearing for that purpose and give notice to the jurors as required by Code of Civil Procedure Section 237.  So I'm going to deny

the request for the release of juror names, addresses and phone numbers.

(4 RT 482.)

2.      <u>Analysis</u>

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . .

trial  . . . by an impartial jury," U.S. Const., Amends. 6 and 14; <u>see</u> <u>Duncan v. Louisiana</u>, 391

U.S. 145 (1968).  "The central inquiry in determining whether a juror should be removed for

cause is whether that juror holds a particular belief or opinion that will prevent or substantially

impair the performance of his duties as a juror in accordance with his instructions and his oath."

<u>United States v. Padilla-Mendoza</u>, 157 F.3d 730, 733 (9th Cir. 1998) (internal quotation marks

and citation omitted.)

As Respondent has clarified Petitioner does not seek to challenge the trial court's denial

of his motion to unseal the juror identification information.  However, even if such challenge

were raised, it would not be cognizable, as the trial court's decision was based on an

interpretation and application of state statutory law (Cal. Code of Civ. Proc. § 237).  <u>See</u> 28

U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions.  In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, law, or treaties of the United States.").

Nor does Petitioner appear to challenge the sufficiency of the trial court's inquiry into the

matter.  Rather, Petitioner appears to challenge solely the trial court's ultimate finding and failure

to dismiss the challenged juror.

The trial court's failure to dismiss Juror No. #0036 did not render Petitioner's trial

fundamentally unfair.  The juror immediately notified the court when she became aware of her

acquaintance with the victim, and the trial court promptly held a hearing on the matter.  <u>See</u> <u>Dyer</u>

<u>v. Calderon</u>, 151 F.3d 970, 974 (9th Cir. 1998) (en banc) (stating that "[a] court confronted with a

colorable claim of juror bias must undertake an investigation of the relevant facts and

circumstances").  Juror #0036 was specifically asked whether she could judge the victim's

1   testimony impartially, and she stated in unequivocal terms that she could judge the testimony the

2   same as anyone else's.  There is no evidence that the juror's minimal contact with the victim

3   would in any way affect her ability to perform her functions as an impartial juror.  Accordingly,

4   Petitioner's jury misconduct claim fails on the merits.

5   G.      Ineffective Assistance of Appellate Counsel

6           Petitioner claims that his appellate counsel was ineffective for failing to raise the claim

7   that his trial counsel was ineffective for failing to object to improper questions by the District

8   Attorney.  Petitioner references the comment made by the California Court of Appeal questioning

9   "why counsel did not object to the prosecutor's emphasis through questions on [Petitioner's] use

10  of a firearm in connection with his prior assault" and observed "[trial] counsel's choice to bring

11  up [Petitioner's] prior convictions during direct examination" was not questioned.  (Petition, at

12  35; Lodged Doc. No. 8, Opinion, at 11.)

13          Petitioner presented this claim in his state habeas corpus petitions to the Kings County

14  Superior Court and the California Supreme Court.  (Lodged Doc. Nos. 10, 11.)  Both courts

15  denied the petitions without comment.  (Id.)  As with the preceding claim, this Court must

16  "independently review the record to determine whether the state court clearly erred in its

17  application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007),

18  quoting Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976,

19  982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply

20  reasoning for its decision, but an independent review of the record is required to determine

21  whether the state court clearly erred in its application of controlling federal law.").

22          Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

23  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

24  assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller

25  v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

26  Cir.1986); See, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that

27  where a defendant has been actually or constructively denied the assistance of appellate counsel

28  altogether, the Strickland standard does not apply and prejudice is presumed; the implication is

1  that Strickland does apply where counsel is present but ineffective).

2       To prevail, Petitioner must show two things.  First, he must establish that appellate

3  counsel's deficient performance fell below an objective standard of reasonableness under

4  prevailing professional norms.   Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052,

5  2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there was a

6  reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on

7  appeal. Id. at 694.  A "reasonable probability" is a probability sufficient to undermine confidence

8  in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether

9  the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th

10  Cir.1998).  The presumption of reasonableness is even stronger for appellate counsel because he

11  has wider discretion than trial counsel in weeding out weaker issues; doing so is widely

12  recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d

13  1428, 1434 (9th Cir.1989).  Appealing every arguable issue would do disservice to the Petitioner

14  because it would draw an appellate judge's attention away from stronger issues and reduce

15  appellate counsel's credibility before the appellate court. Id.  Appellate counsel has no

16  constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10

17  (citing Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

18       Although the Court of Appeal questioned defense counsel's failure to object to the

19  prosecutor's emphasis during cross-examination of Petitioner's use of a firearm in connection

20  with his prior assault conviction, the state appellate court found exploration of the issue

21  unwarranted as Petitioner clearly failed to demonstrate any prejudice as a result.  The appellate

22  court did not clearly err in its determination of the applicable federal standard under Strickland.

23  As explained under section D, the testimony of the victim was corroborated by two non-

24  interested witnesses.  Moreover, Petitioner was subject to impeachment with some or all of his

25  felony convictions.  As previously stated, it is simply not reasonably probable that the result

26  would have been more favorable to Petitioner had Petitioner's trial counsel objected to the

27  prosecution's impeachment of Petitioner's testimony, and Petitioner's claim fails under

28  Strickland.  As such, appellate counsel could not have ineffective for failing to raise a meritless

1  claim. <u>Miller v. Keeney</u>, 882 F.2d at 1434 n.10.

2                                              <u>ORDER</u>

3          Based on the foregoing, it is HEREBY ORDERED that:

4          1.      The instant petition for writ of habeas corpus is DENIED;

5          2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and,

6          3.      The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c);

7                  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be granted where

8                  the applicant has made "a substantial showing of the denial of a constitutional

9                  right," i.e., when "reasonable jurists would find the district court's assessment of

10                 the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926,

11                 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable

12                 jurists would not find it debatable that the state courts' decision denying

13                 Petitioner's petition for writ of habeas corpus were not "objectively

14                 unreasonable."

16     IT IS SO ORDERED.

17     **Dated:   May 1, 2008**          _____/s/ **Dennis L. Beck**_____
                                          UNITED STATES MAGISTRATE JUDGE